UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| HELEN D. KIRK, | ) | NO. EDCV 04-00948-MAN |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | MEMORANDUM OPINION AND ORDER |
| | ) | |
| | ) | |
| JO ANNE B. BARNHART, | ) | |
| Commissioner of the | ) | |
| Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |
| ———————————————————— | ) | |

Plaintiff filed a Complaint on August 3, 2004, seeking review of the denial by the Social Security Commissioner ("Commissioner") of Plaintiff's claim for disability insurance benefits ("DIB"), period of disability benefits, and supplemental security income ("SSI"). 42 U.S.C. §§ 405(g) 1388(c)(3). On September 7, 2004, the parties filed a "Consent to Proceed Before a United States Magistrate Judge," pursuant to 28 U.S.C. § 636. The parties filed a Joint Stipulation on May 5, 2005, in which: Plaintiff seeks an order reversing the Commissioner's decision denying benefits and remanding for the payment of benefits or, alternatively, remanding the case to the Commissioner for a new hearing; and Defendant requests that the Commissioner's decision be affirmed.

The Court has taken the parties' Joint Stipulation under submission without oral argument.

### SUMMARY OF ADMINISTRATIVE PROCEEDINGS

Plaintiff filed applications for DIB and SSI on August 3, 2001. (Administrative Record ("A.R.") 112-15, 457-60.) Plaintiff claims to have been disabled since August 15, 2000, due to ruptured discs in the neck, herniated lower back discs, and arthritis in the hips, right knee, and arms. (A.R. 17, 112, 457.) Plaintiff has past relevant work experience as a cashier, grinding machine operator, fast foods worker, stock clerk, and sewing machine operator. (A.R. 17.)

The Commissioner denied Plaintiff's claim for benefits initially and upon reconsideration. On February 10, 2004, Plaintiff, who was represented by an attorney, appeared and testified at a hearing before Administrative Law Judge Helen Hesse ("ALJ"). (A.R. 40-91.) In an April 12, 2004 decision, the ALJ found that Plaintiff was not disabled, and the Appeals Council subsequently denied Plaintiff's request for review of that decision. (A.R. 16-27, 4-6.)

### SUMMARY OF ADMINISTRATIVE DECISION

In her April 12, 2004 written decision, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset of disability and was insured for benefits through the date of the decision. (A.R. 26.) The ALJ found that Plaintiff has a "limited" education pursuant to 20 C.F.R. §§ 404.1564 and 416.964, is a

2

"younger individual" pursuant to 20 C.F.R. §§ 404.1564 and 416.963, and has no transferable skills pursuant to 20 C.F.R. §§ 404.1568 and 416.968.  (A.R. 26-27.)   The ALJ found that Plaintiff's impairments (consisting of: lumbosacral spine musculoligamentous sprain and strain; cervical disc disease status post diskectomies and fusions at C5-6 and C6-7 with bone graft and implant of cervical plate; status post bilateral carpal tunnel releases; status post right anterior acromioplasty; history of alcohol abuse, in remission; nicotine abuse; and depressive disorder, not otherwise specified) are "severe," but Plaintiff does not have an impairment or combination of impairments listed in, or medically equivalent to an impairment listed in, Appendix 1, Subpart P, Regulation No. 4.  (A.R. 26.)

The ALJ found Plaintiff's testimony regarding her pain and limitations to be not credible.  (A.R. 26.)   The ALJ concluded that Plaintiff has the following residual functional capacity:

> [Plaintiff] is able to sit for six hours and can stand/walk
> for six hours during an eight-hour workday.  She is able to
> occasionally lift/carry up to 25 pounds occasionally and up to
> ten pounds occasionally.  [Plaintiff] can use her right upper
> extremity for pushing/pulling on occasion and has no other
> upper or lower extremity restrictions.  [Plaintiff] should
> never climb ladders or scaffolds but can occasionally climb
> stairs, bend, stoop, crouch and crawl.  Kneeling and balancing
> activities can be performed frequently as well as gross and
> fine manipulation tasks.  [Plaintiff] is able to reach
> overhead occasionally using the right upper extremity and can

3

frequently use her left upper extremity for overhead reaching. [Plaintiff] should not work consistently where she would be exposed to unprotected heights, dangerous or fast moving machinery. [Plaintiff] is limited to performing simple, repetitive work tasks in jobs that require hypervigilance or being in charge of safety operations. She should have little contact with coworkers and/or the public; no intense interpersonal interactions and should avoid working in an object-oriented environment. In addition, [Plaintiff] is restricted to working at a moderate pace at jobs that do not involve high production, quotas, or rapid assembly line work.

(A.R. 26.)

The ALJ concluded that, given her limitations, Plaintiff cannot perform her past relevant work. (A.R. 26.) However, using Rule 202.18 of the Medical-Vocational Guidelines (the "Grids") as a framework, the ALJ found that Plaintiff can perform a significant number of other jobs in the national economy, such as unskilled/light bench assembly jobs and unskilled/light hand packager jobs.[1] (A.R. 27.) Accordingly, the ALJ concluded that Plaintiff was not entitled to DIB or SSI. (A.R. 27.)

**STANDARD OF REVIEW**

This Court reviews the Commissioner's decision to determine

---

[1]   Under Rule 202.18, a person who is a "younger individual," with a "limited or less" education, and has no transferable skills, is not disabled.   20 C.F.R. Pt. 220, App. 2.

whether it is free from legal error and supported by substantial evidence.  _Smolen v. Chater_, 80 F.3d 1273, 1279 (9th Cir. 1996).  The Commissioner's decision must stand if it is supported by substantial evidence and applies the appropriate legal standards.  _Saelee v. Chater_, 94 F.3d 520, 521 (9th Cir. 1996).  Substantial evidence is "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion."  _Moncada v. Chater_, 60 F.3d 521, 523 (9th Cir. 1995).

Although this Court cannot substitute its discretion for that of the Commissioner, this Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion."  _Desrosiers v. Secretary of Health and Human Serv._, 846 F.2d 573, 576 (9th Cir. 1988); _see also_ _Jones v. Heckler_, 760 F.2d 993, 995 (9th Cir. 1985).  "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities."  _Andrews v. Shalala_, 53 F.3d 1035, 1039-40 (9th Cir. 1995).  This Court must uphold the Commissioner's decision if it is supported by substantial evidence and free from legal error, even when the record reasonably supports more than one rational interpretation of the evidence.  _Id_. at 1041; _see also_ _Morgan v. Commissioner of the Social Security Administration_, 169 F.3d 595, 599 (9th Cir. 1999); _Flaten v. Secretary_, 44 F.3d 1453, 1457 (9th Cir. 1995).

**DISCUSSION**

Plaintiff alleges two disputed issues.  _First_, Plaintiff contends

5

that the ALJ failed to accord proper weight to the opinions of her treating physician, Dr. Patricia Christie.  <u>Second</u>, Plaintiff contends that the ALJ improperly excluded the side effects of her medications in finding her residual functional capacity.  (Joint Stip. at 3.)

**A.   The ALJ Did Not Provide Specific And Legitimate Reasons For Rejecting All Of Dr. Christie's Opinions.**

When the ALJ rejects the opinion of a treating physician, even if it is contradicted, the ALJ may reject that opinion only by providing specific and legitimate reasons for doing so, supported by substantial evidence in the record.  <u>Lester v. Chater</u>, 81 F.3d 821, 830 (9th Cir. 1995); *see also* <u>Reddick v. Chater</u>, 157 F.3d 715, 725 (9th Cir. 1998)(ALJ erred by rejecting the treating doctors' opinions and relying upon Social Security examiners' opinions in finding that claimant's chronic fatigue syndrome had not rendered her disabled).  Broad and vague reasons will not suffice for rejecting the treating physician's opinion. <u>McAllister v. Sullivan</u>, 888 F.2d 599, 602 (9th Cir. 1989).  When a treating doctor's opinion is uncontradicted, it may be rejected by an ALJ only "for 'clear and convincing' reasons supported by substantial evidence in the record." <u>Holohan v. Massanari</u>, 246 F.3d 1195, 1202-03 (9th Cir. 2001)(citation omitted); <u>Reddick</u>, 157 F.3d at 725.  These same rules govern the ALJ's consideration of the opinions of examining physicians.  <u>Lester</u>, 81 F.3d at 830-31.

The opinions of other physicians -- examining physicians and non-examining, testifying medical experts -- may constitute substantial evidence upon which an ALJ may rely, when they are properly supported.

*See, e.g.,* <u>Tonapetyan v. Halter</u>, 242 F.3d 1144, 1149 (9th Cir. 2001) (consultative examiner's opinion on its own constituted substantial evidence, because it rested on independent examination of claimant); <u>Morgan v. Commissioner of Soc. Sec. Admin.</u>, 169 F.3d 595, 600 (9th Cir. 1999)(testifying medical expert opinions may serve as substantial evidence when "they are supported by other evidence in the records and are consistent with it").

In a June 12, 2003 Medical Evaluation Form, Dr. Christie diagnosed Plaintiff with lower back pain with radiculopathy, neck pain, depression, and anxiety.  She found that Plaintiff:  would not be able to work at least six hours on a sustained daily basis even if provided a sit only, stand only, or alternating sit and stand option; would need three to five hours of rest throughout an eight-hour day; should do no lifting; cannot use her hands and arms repetitively for grasping, pulling, pushing, or fine manipulation for eight hours on a sustained daily basis; cannot use her legs to pull or push repetitively for eight hours on a sustained daily basis; cannot climb or reach on a repetitive sustained daily basis; should not work in certain environments (those with unprotected heights, dust, fumes and gases; moving machinery; marked changes in temperature or humidity; or automotive equipment that she must drive); and would not be able to maintain adequate attendance on a sustained daily basis at any job following her alleged onset date. (A.R. 373-74.)

In rejecting the opinions of Dr. Christie, Plaintiff's treating physician, the ALJ stated:

The undersigned rejects the opinion of the treating physician, Dr. Christie, as she did not provide a comprehensive rational[e] to support her assessment of totally debilitating daily pain despite ongoing treatment and pain medications. There was no statement to show that surgical intervention was considered for [Plaintiff's] lower back condition and no reason to believe that [Plaintiff] is not able to perform repetitive bilateral hand activities since she was able to work with her hands long after her carpal tunnel surgeries without complaints. The ALJ also disagrees with Dr. Christie's conclusion that [Plaintiff] required from three to five hours of rest during a routine work day as the clinical notes do not document the need for such an extreme level of daytime resting. Clearly, this treating physician was relying on the claimant's subjective physical and mental symptoms when reaching her conclusions instead of objective evidence of record showing that [Plaintiff] is capable of performing a wide and significant range of daily activities on a routine basis.

(A.R. 22.)

Instead, the ALJ credited the opinion of Dr. Jensen, the non-examining medical expert, who opined that Plaintiff can: perform work at the "light" level; sit six hours and stand/walk for six hours in an eight-hour workday; reach overhead with the right upper extremity occasionally and with the left upper extremity frequently; push/pull with the upper extremities occasionally and perform bilateral gross and

8

fine manipulation activities frequently; balance and kneel frequently, but never climb ropes or ladders; and climb stairs, bend, stoop, and crawl occasionally. (A.R. 22-23, 60-62.) Specifically, the ALJ stated that she "assigns great probative weight to the well-reasoned conclusions of the medical expert, noting that his opinion is consistent with that of the consultative examiner and the great weight of the medical evidence." (A.R. 23.) The "consultative examiner" to whom the ALJ refers is Dr. Bunsri Sophon, an orthopaedic physician, who examined Plaintiff on behalf of the Commissioner. In a February 22, 2002 report, Dr. Sophon found that Plaintiff "is able to lift and carry 50 pounds occasionally and 25 pounds frequently" and "is able to sit, stand, and walk for six hours out of an eight hour workday." (A.R. 311.)

The hearing transcript contains the following colloquy between the ALJ and Dr. Jensen as to Dr. Jensen's opinion of Plaintiff's limitations and the bases for his opinion:

Q: Okay. Doctor, based on your education, knowledge, experience and review of the medical record[,] what is your opinion as to [Plaintiff's] impairmen[t] or impairments including specific medical diagnoses and the exhibi[t] numbers upon which you base your opinion?

A: Yes, from the orthopedic or muscular skeletal standpoint she has – what appears to be a cervical pain syndrome in Exhibit 3, page 11. And she has status post cervical anterior [diskectomy] infusion at two levels, C-5 through C-7. Also she has a low back pain with – on the basis of degenerative

9

1   disc disease at the L-4, 5 level.  She's had a history of a

2   bilateral   carpal   tunnel   releases   and   a   right   shoulder

3   procedure.  In my opinion listings are not met, nor equaled in

4   combination.

5

6   (A.R. 59-60.)  However, Dr. Jensen did not address Dr. Christie's June

7   12, 2003 opinion.  Indeed, Dr. Jensen did not cite or discuss important

8   recent objective testing, the April 22, 2003 MRI showing that "[t]he L4-

9   5 disc demonstrates moderate degeneration and a 4 mm of central annular

10  bulge which contours the ventral aspect of the thecal sac."  (A.R. 414.)

11

12       Here, the Court cannot confirm that the ALJ's rejection of Dr.

13  Christie's opinion rests on substantial evidence.  The ALJ's primary

14  reason for rejecting Dr. Christie's opinion -- that Dr. Christie "did

15  not provide a comprehensive rational[e] to support her assessment" --

16  disregards Dr. Christie's treatment relationship with Plaintiff for at

17  least a year and a half prior to rendering her June 12, 2003 assessment.

18  Furthermore, in light of recent objective evidence, especially the April

19  22, 2003 MRI showing a four millimeter disc bulge, it was improper for

20  the ALJ to reject Dr. Christie's opinion by surmising that Dr. Christie

21  simply based her opinions as to Plaintiff's limitations on Plaintiff's

22  subjective symptoms alone.

23

24       Moreover, the ALJ's rejection of Dr. Christie's opinions relating

25  to Plaintiff's back impairments, because "[t]here was no statement to

26  show that surgical intervention was considered for [Plaintiff's] lower

27  back condition," is not a specific and legitimate reason for rejecting

28  Dr. Christie's opinion.   Certainly, there is no necessity that a

10

claimant require additional surgery for a back impairment to be considered disabling.  In any event, the record amply demonstrates that Plaintiff's symptoms persisted following her back surgery in January 2000.[2]

Similarly, the ALJ's rejection of Dr. Christie's opinion that Plaintiff could not perform "repetitive bilateral hand activities," because she continued to work after having carpal tunnel surgery in 1994 and 1995, does not account for the possibility that these limitations could arise from Plaintiff's cervical and neck impairments.  (See A.R. 58 -- colloquy between Plaintiff and the ALJ indicating that pain from Plaintiff's neck radiates all the way down into her right arm.)  While it is true that Dr. Christie's notes contain little mention of cervical symptoms that specifically affected Plaintiff's hands, they do note some

_____

[2]     (See, e.g., A.R. 379 -- Dr. Christie's August 16, 2002 progress notes indicating that Plaintiff reported back and shoulder pain; 381 -- Dr. Christie's July 9, 2002 progress notes indicating that Plaintiff reported pain over the cervical and lumbosacral spine; 384 -- Dr. Christie's April 1, 2002 progress notes indicating that Plaintiff reported back pain and spasm and noting altered gait; 385 -- Dr. Christie's January 8, 2002 progress notes indicating that Plaintiff exhibited a limited range of motion in her neck and reported back and neck pain; 389 -- Dr. Cyrus Ghavam's September 27, 2000 progress notes indicating little improvement of Plaintiff's back symptoms; 390 -- Dr. Ghavam's August 11, 2000 report noting that Plaintiff "is in obvious significant discomfort" due to her back pain and noting a positive nerve tension sign as well as a diminished Achilles tendon reflex; 398-400 -- Dr. Jiensup Kim's July 16, 2002 report evaluating Plaintiff's cervicalgia and lumbalgia and noting symptoms, such as a "markedly antalgic gait with the patient limping on the right lower extremity"; 407 -- Dr. Christie's July 3, 2003 progress notes indicating back pain with decreased range of motion; 409 -- Dr. Christie's May 9, 2003 progress notes indicating back pain with radiculopathy; 412 -- Dr. Christie's March 24, 2003 progress notes indicating back pain; 413 -- Dr. Christie's January 27, 2003 progress notes indicating back pain with palpation over the lower sacrum region;  418 -- Dr. Christie's October 24, 2002 progress notes indicating back pain with palpation over the lumbosacral region and decreased leg lift in all directions; 419 -- Dr. Christie's September 19, 2002 progress notes indicating decreased flexion and back pain.)

11

1  symptoms of this type.  (*See, e.g.*, A.R. 404 -- Dr. Christie's September

2  2, 2003 progress notes noting pain in the left wrist.)

3

4  Furthermore, other treating doctors' notes during Plaintiff's

5  claimed period of disability show that Plaintiff contended that her neck

6  and cervical pain extended into her hands.  For instance, on July 16,

7  2002, Plaintiff was examined by Dr. Kim for her cervicalgia and

8  lumbalgia "with symptoms radiating from the neck into the right upper

9  extremity."  Dr. Kim noted that Plaintiff reported "experiencing right

10 arm coldness and weakness along with numbness and tingling of the 3rd,

11 4th, and 5th digits of her right hand" and "stiffness in both shoulders

12 with limited ability to move her arms" and "shaking or tremors of the

13 right upper extremity and loss of coordination."[3] (A.R. 398.)

14

15 Thus, the ALJ improperly rejected Dr. Christie's June 12, 2003

16 evaluation.  Dr. Jensen's testimony -- which provides only a curt review

17 of the medical evidence of record -- is not substantial evidence upon

18 which to reject Dr. Christie's June 12, 2003 evaluation.  In addition,

19 Dr. Sophon based his conclusions on his physical examination of

20 Plaintiff, but did not review any x-rays or objective testing.  (A.R.

21 311.)  In light of the lack of objective evidentiary bases for the

22 opinions of both Dr. Jensen and Dr. Sophon, upon whom the ALJ relied in

23 determining Plaintiff's residual functional capacity, the Court cannot

24
_____

25   [3]   (*See also* A.R. 392 -- Dr. Ghavam's January 21, 2000 progress
   notes prior to Plaintiff's anterior diskectomy noting that Plaintiff
26 complained of pain radiating from her neck into her shoulder and into
   her thumb and index finger, which was numb; 395 -- Dr. Ghavam's January
27 4, 2000 progress notes indicating that Plaintiff complained of weakness
   in her right arm and neck pain which radiated into her right arm and
28 caused numbness in her thumb and paresthesias in the dorsal forearm and
   weakness in her right arm.)

confirm that the ALJ's residual functional capacity finding is adequately grounded on substantial evidence.

Moreover, as it appears that the ALJ primarily rejected Dr. Christie's opinion due to a lack of understanding regarding the bases for her opinions, it is appropriate here to remand the case for the ALJ to develop the record more fully. See Brown v. Heckler, 713 F.2d 441, 442-43 (9th Cir. 1993)(Commissioner has an affirmative duty to develop the record, even if the claimant is represented by counsel); 20 C.F.R. §§ 404.1512(e), 416.912(e)(duty to re-contact treating physician); see also 20 C.F.R. §§ 404.1512a(b), 416.919a(b)(listing situations requiring a consultative examination, such as a conflict, inconsistency, ambiguity or insufficiency in the evidence); Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002)(requirement in 20 C.F.R. §§ 404.1512(e) and 416.912(e) that the Commissioner re-contact treating sources is triggered where the information from the treating sources is inadequate to make a determination regarding disability). After more fully developing the record, the ALJ should render a new residual functional capacity finding and should determine whether Plaintiff can perform her past relevant work or other work based on that new finding.

Accordingly, the ALJ's rejection of Dr. Christie's June 12, 2003 evaluation finding regarding Plaintiff's residual functional capacity constitutes reversible error.

///

///

///

///

13

**B.   The ALJ Improperly Rejected The Side Effects Of Plaintiff's Medications.**

In order to properly evaluate the symptoms of pain, 20 C.F.R. § 404.1529(c)(3) explains:

> Since symptoms suggest a greater severity of impairment than can be shown by objective medical evidence alone, we will carefully consider any other information you may submit about your symptoms.  The information that you, your treating or examining physician or psychologist, or other persons provide about your pain or other symptoms . . . is also an important indicator of the intensity and persistence of your symptoms. . . .  Factors relevant to your symptoms, such as pain, which we will consider include: . . . (iv) *The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms*.

20 C.F.R. § 404.1529(c)(3)(iv)(emphasis added).

According to Social Security Ruling 96-7p:  "Because symptoms, such as pain, sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone, the adjudicator must carefully consider the individual's statements about symptoms with the rest of the relevant evidence in the case record in reaching a conclusion about the credibility of the individual's statements if a disability determination or decision that is fully favorable to the individual cannot be made solely on the basis of objective medical

14

evidence."  Like Section 404.1529(c)(3), Social Security Ruling 96-7p sets forth factors regarding a claimant's symptoms and pain that the ALJ should take into consideration, including the type, dosage, effectiveness, and side effects of any medication a claimant takes or has taken.

Case law further provides that, once a disability claimant produces objective medical evidence of an underlying impairment that could reasonably be expected to cause some level of pain of the type which the claimant alleges, the claimant's subjective complaints regarding the severity of his or her pain may not be discredited based solely on a lack of objective medical evidence to corroborate the allegations. Tonapetyan, 242 F.3d at 1147-48; Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991); Fair v. Bowen, 885 F.2d 597, 601 (9th Cir. 1985).  As the Ninth Circuit has explained:

> [A]n ALJ's finding that a claimant generally lacked credibility is a permissible basis to reject excess pain testimony.  But, because a claimant need not present clinical or diagnostic evidence to support the severity of his pain, *Gonzalez v. Sullivan*, 914 F.2d 1197, 1201 (9th Cir. 1990) (stating that "it is the very nature of excess pain to be out of proportion to the medical evidence"), a finding that the claimant lacks credibility cannot be premised wholly on a lack of medical support for the severity of his pain.

Light v. Social Security Admin., 119 F.3d 789, 792 (9th Cir. 1997). This rule is based on the recognition that pain is an inherently

15

subjective phenomenon, which cannot be objectively verified or measured and varies significantly among individuals.  <u>Bunnell</u>, 947 F.2d at 347.

Unless the evidence suggests affirmatively that a claimant is malingering, the ALJ must provide clear and convincing reasons for rejecting the claimant's excess pain or symptom testimony, such as conflicts between the claimant's testimony and conduct, or internal contradictions in the claimant's testimony.  <u>Dodrill v. Shalala</u>, 12 F.3d 915, 918 (9th Cir. 1993); <u>Light</u>, 119 F.3d at 792.  In determining whether a claimant's testimony regarding the severity of his symptoms is credible, the ALJ may consider:  "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities."  <u>Smolen</u>, 80 F.3d at 1284.

The Court will give great weight to the ALJ's credibility assessment.  <u>Anderson v. Sullivan</u>, 914 F.2d 1121, 1124 (9th Cir. 1990); <u>Brawner v. Secretary</u>, 839 F.2d 432, 433 (9th Cir. 1988)(recognizing that the ALJ's credibility determination is to be given great weight when supported specifically).  However, when an ALJ's decision rests on a negative credibility evaluation, "the ALJ must make findings on the record and must support those findings by pointing to substantial evidence on the record."  <u>Cequerra v. Secretary</u>, 933 F.2d 735, 738 (9th Cir. 1991); <u>Oreteza v. Shalala</u>, 50 F.3d 748, 750 (9th Cir. 1995)(the ALJ's findings must be "sufficiently specific to permit the reviewing

court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony.")  When discrediting a claimant's testimony, it is not enough for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests that the complaints are not credible.  *See* <u>Swenson v. Sullivan</u>, 876 F.2d 683, 688 (9th Cir. 1979).

In rejecting the side effects of Plaintiff's medications, the ALJ stated, as follows:

> Furthermore, there is no credible evidence that regular usage of strong medication to alleviate [Plaintiff's] symptoms would significantly impair [Plaintiff's] ability to do basic work activities.  There was no evidence in the medical record of any significant side effects that could not be alleviated with adjustment and/or changes of medication under careful monitoring.  In addition, the progress notes stated on several occasions that [Plaintiff] was non compliant with her medications without seeking proper instruction from her doctors or keeping her refill appointments.  Invariably, her symptoms were worse on those occasions.

(A.R. 22.)

Plaintiff contends that the ALJ failed to incorporate the side effects of fatigue and confusion resulting from her medications, about which Dr. Christie opined in her June 12, 2003 Evaluation Form.  (Joint Stip. at 8.)  In that form, Dr. Christie noted that Plaintiff's

17

"medications cause drowsiness and confusion."  (A.R. 373.)  Dr. Christie's records show that Plaintiff consistently has been taking narcotic pain relievers, such as Vicodin and Tylenol III, since Dr. Christie has been treating her.  (A.R. 375 -- Dr. Christie's September 19, 2002 progress note showing Plaintiff taking Vicodin; 381 -- Dr. Christie's July 9, 2002 progress note showing Plaintiff taking Vicodin; 384 -- April 1, 2002 progress note showing Plaintiff taking Tylenol III; 385 -- January 8, 2002 progress note showing Plaintiff taking Tylenol III; 399 -- Dr. Kim's July 16, 2002 report noting that Plaintiff taking Vicodin; 404 -- Dr. Christie's September 2, 2003 report showing Plaintiff taking Vicodin; 413 -- Dr. Christie's January 27, 2003 progress note showing Plaintiff taking Vicodin.)

The ALJ did not question Plaintiff about the side effects of her medication.  However, in her Reconsideration Disability Report, Plaintiff reported that she had "vision impaired" and "difficulty concentrating," was "forgetful," had "less stamina," and needed "to rest more often."  (A.R. 155.)  In addition, she reported that she was "not able to drive due to lack of concentration and nerves."  (A.R. 157.)

Consistent use of narcotic medication definitely could affect Plaintiff's ability to function in the workplace and could be producing symptoms, including Plaintiff's allegations of fatigue and inability to concentrate.  The manufacturer of Vicodin provides: "Hydrocodone [Vidodin ES], like all narcotics, may impair the mental and/or physical abilities required for the performance of potentially hazardous tasks such as driving a car or operating machinery; patients should be cautioned accordingly." PHYSICIAN'S DESK REFERENCE, p. 1487 (53d ed. 1999).

In addition, the manufacturer of Tylenol with Codeine (Tylenol III) notes that this drug contains controlled substances and that tolerance can develop to it, and further warns against adverse reactions, such as "lightheadedness, dizziness, sedation, shortness of breath, nausea and vomiting."  (*Id*. at 2252-53.)

Although it is possible that Plaintiff may be able to take other medications that may not cause the side effects that are caused by Vicodin and Tylenol III, the record does not contain any evidence to support such an assertion.  Furthermore, Dr. Jensen, the medical expert, was not questioned as to any side effects that Plaintiff may be experiencing from her medications, much less any way to avoid such side effects or alternative medications for Plaintiff.  The ALJ's conclusion that any significant side effects could be alleviated by changing Plaintiff's medication or monitoring her more closely appears to be based on her own medical conclusion and, therefore, is improper.  *See* Day v. Weinberger, 522 F.2d 1154, 1156 (9th Cir. 1975)(an ALJ is forbidden from making his own medical assessment beyond that demonstrated by the record).

Accordingly, the ALJ's finding that Plaintiff has no side effects from her medications that "would significantly impair her ability to do basic work activities" is in error.

C.    **Remand Is Necessary**.

In view of the ALJ's failure to adequately develop the record regarding Plaintiff's limitations in assessing her residual functional

19

1 capacity and his improper credibility determination, this action must be
2 remanded.  *See* <u>McAllister</u>, 888 F.2d at 603.

3

4                                **CONCLUSION**

5

6        Accordingly, for the reasons stated above, the denial of benefits
7 is REVERSED, and this case is REMANDED for further proceedings
8 consistent with this Memorandum Opinion and Order.  Judgment shall be
9 entered reversing the decision of the Commissioner, and remanding the
10 matter for further administrative action consistent with this Memorandum
11 Opinion and Order.

12

13 DATED: March 30, 2006

14                                     _____/s/_____
                                      MARGARET A. NAGLE
15                                UNITED STATES MAGISTRATE JUDGE

16

17

18

19

20

21

22

23

24

25

26

27

28

                                      20